IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DAVID HELWIG, on Behalf of Himself and All Others Similarly Situated**<br><br>Plaintiff,<br><br>vs.<br><br>**CONCENTRIX CORPORATION, a New York corporation doing business in Ohio**<br><br>Defendant. | CASE NO.<br><br>JUDGE |

**CLASS ACTION COMPLAINT**
**(Jury Demand Endorsed Hereon)**

## NATURE OF THE ACTION

1. This is a class action on behalf of individuals who were the subject of consumer reports used obtained by Concentrix Corporation to evaluate job applicants between April 2015 and the present, inclusive (the "Class Period") seeking remedies under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.

## PARTIES

2. Helwig is and has been a resident of Lorain County, Ohio during all periods relevant to this complaint and is a "consumer" as defined by 15 U.S.C. § 1681a.

3. Defendant Concentrix is a for-profit corporation employing over 100,000 people who work call centers throughout the United States and abroad, and from home.

4. Further, Concentrix is a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," in the Northern District of Ohio as those terms are defined by 15 U.S.C. § 1681a.

**JURISDICTION AND VENUE**

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. Venue is proper in the Northern District of Ohio because Concentrix is subject to personal jurisdiction in this District, purchases consumer reports in this District, and takes adverse action against job applicants within this District. 28 U.S.C. § 1391(b) and (c).

**FACTUAL ALLEGATIONS**

7. Among other things, the FCRA regulates the collection, maintenance, and disclosure of public record information by consumer reporting agencies ("CRAs").

8. Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

9. During the Class Period, Concentrix purchased consumer reports from Sterling Infosystems, Inc. ("Sterling"), a consumer reporting agency headquartered in Independence, Ohio, which were used as a basis for evaluating and taking adverse action against job applicants.

10. The FCRA mandates that an employer, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the consumer's report and a summary of the consumer's rights under the FCRA.

11. Concentrix's employee screening process is inherently flawed, such that it fails to comply with the pre-adverse action requirements under 15 U.S.C. 1681b(b)(3).

12. Concentrix's repeated violations of the FCRA have been willful, wanton and reckless in that Concentrix knowingly or recklessly disregarded its statutory duty to comply with the requirements of the FCRA.

13. Moreover, the FCRA requirements set forth herein have been the subject of numerous appellate court decisions, as well as staff opinions published by the Federal Trade Commission ("FTC").

14. Additionally, Sterling provides clients like Concentrix with free resource materials, newsletters and online webinars regarding FCRA compliance, which Concentrix has chosen to disregard.

15. Title 15 U.S.C. § 1681n(a) permits a consumer to recover statutory damages, along with attorney fees and costs for willful violations of the FCRA.

## HELWIG'S EXPERIENCE

16. In early February 2020, Helwig applied for employment with Concentrix online.

17. On February 13, 2020, he received a letter offering him fulltime employment as an Advisor I, Technical Support starting on February 26, 2020. The offer was contingent on among other items, "satisfactory evaluation of references and background checks…."

18. Concentrix contracts with Sterling to conduct background checks on applicants like Helwig who are offered employment.

19. This process is generally completed by the applicant online, and the results are made available to Concentrix almost instantaneously.

20. After Sterling completed Helwig's consumer report, he received the email notification below at 10:53 a.m. on February 17, 2020:



21. The link provided in the email directed Helwig to the letter attached hereto as Exhibit A.

22. Although Exhibit A purports to suggest that Concentrix was "***still considering*** revoking an employment offer, denying continuation of [his] employment, or denying a promotion to [him]", he received the following automated email only two hours later:



4

23. The February 17, 2020 email clearly communicated that Concentrix had taken adverse action against Helwig without any opportunity for Helwig to address the purported issues in his background report or dispute the information contained therein. The email even acknowledges that the applicant does not have the derogatory report yet as the report "*will* be sent to you from Sterling…"

24. On information and belief, the February 17, 2020 email is part of Concentrix's automated process for denying applicants based on disqualifying information in a background report. Once Concentrix receives an applicant's background report containing derogatory background information, it immediately and unequivocally rejects the applicant from employment. Concentrix does not provide the applicant with an opportunity to respond or dispute the information contained in his or her background report. Any subsequent information provided by Sterling is perfunctory—the employment opportunity is already lost.

25. This adverse action process does not comply with the FCRA's requirements under 15 U.S.C. § 1681b(b)(3)(A). By uniformly rejecting applicants based on an automated process and a predetermined matrix of disqualifying criminal offenses, applicants are deprived of a meaningful opportunity to contest the information contained in the background. *E.g.*, *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625-633 (D. Or. 2015) ("to comply with the statute, an employer who intends to take adverse action against an applicant must give the applicant an opportunity to change the employer's mind. This opportunity must be real; a *pro forma* period between the preliminary and final decision does not satisfy the statute."); *and Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 697 (7th Cir. 2018) (finding concrete injury when plaintiff is not provided pre-adverse action notice under § 1681b(b)(3)(A) and an opportunity to address information contained on background check).

26. This backwards approach is wholly inconsistent with the FCRA, and Concentrix knows (or should know) it. Concentrix's repeated failures to comply with the straightforward obligations under 15 U.S.C. § 1681b(b)(3)(A) constitute willful violations entitling Helwig and the class members to relief under 15 U.S.C. § 1681n.

## COUNT I – VIOLATION OF 15 U.S.C. § 1681b(b)(3)
*Class Claim*

27. Helwig restates and incorporates the allegations set forth in the preceding paragraphs.

28. In accordance with Rule 23 of the Federal Rules of Civil Procedure, Helwig brings this claim for himself and on behalf of a class defined as follows:

> All individuals residing in the United States that were the subject of a consumer report requested by Concentrix, which Concentrix relied on to take an adverse employment action during the five-year period preceding this action and through the date of class certification.

29. On information and belief, the putative class numbers well over 1,000 individuals, thus the class is so numerous that joinder of all members is impracticable. Information concerning the exact size of the putative class is within the exclusive possession of Concentrix.

30. Helwig's claims are typical of the claims of the other class members as all members were similarly harmed by Concentrix's failure to comply with the FCRA's pre-adverse action requirements. Like Helwig, each class member suffered an adverse employment action based on a consumer report without any opportunity to address the derogatory report prior to suffering adverse action.

31. Helwig will fairly and adequately protect the interests of the class members and has retained counsel competent and experience in complex FCRA class action litigation. Helwig is a member of the class he seeks to represent and does not have any interests antagonistic or in conflict

with the class. Indeed, Helwig's claims are the same as those of the other class members, which arise from the same operative facts and legal theories.

32. Common questions of law and fact exist as to all class members, and these common questions predominate over any questions affecting individual class members, including:

   a. Whether Concentrix provides rejected applicants with a copy of the consumer report *prior* to taking adverse employment action;

   b. Whether Concentrix provides rejected applicants with a summary of the applicant's FCRA rights *prior* to taking adverse employment action;

   c. Whether Concentrix provides applicants with a reasonable opportunity to dispute or explain the information contained in their background report prior to taking adverse employment action; and

   d. Whether Concentrix's actions constitute a willful violation of the FCRA.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Concentrix's conduct stems from common policies and practices resulting in common violations of the FCRA. Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Concentrix's practices. Moreover, the management of a class action here does not present any likely difficulties and will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proof.

34. The conduct, action, and inaction of Concentrix was willful, rendering it liable for statutory and/or actual damages along with punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. Accordingly, Concentrix is liable to Helwig and each class member for statute damages (or actual damages), punitive damages, and for attorney fees and costs. Alternatively, Concentrix's violations were negligent, and Helwig seeks issue certification based on Concentrix's negligence under Fed. R. Civ. P. 23(c)(4).

**WHEREFORE**, Helwig and the putative class request the following relief:

a. That an order be entered certifying the proposed class under Fed. R. Civ. P. 23 and appointing Helwig and the undersigned counsel to represent the class;

b. That judgment be entered for the proposed class against Concentrix for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

c. Alternatively, that the Court certify the class, under Fed. R. Civ. P. 23(c)(4) on the issue that Concentrix's FCRA violations were negligent under 15 U.S.C. § 1681o;

d. Attorney's fees, expenses and costs under 15 U.S.C. §§ 1681n and 1681o; and

e. Any other relief this Court deems equitable and just.

    Respectfully Submitted,

    O'TOOLE, McLAUGHLIN, DOOLEY
    & PECORA, CO., LPA

    /s/ Matthew A. Dooley
    Matthew A. Dooley (0081482)
    Stephen M. Bosak, Jr. (0092443)
    5455 Detroit Road
    Sheffield Village, Ohio 44054
    Telephone: (440) 930-4001
    Facsimile: (440) 934-7208
    Email: mdooley@omdplaw.com
           sbosak@omdplaw.com
    *Counsel for Plaintiff and the putative class*

**TRIAL BY JURY IS DEMANDED**

    /s/ Matthew A. Dooley
    *Counsel for Plaintiff and the putative class*